IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RAUL GARZA TAMEZ | § | |
| v. | § | CIVIL ACTION NO. 6:07cv362 |
| DIRECTOR, TDCJ-CID | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Petitioner Raul Garza Tamez, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Tamez complained of a conviction for murder which he received in the 3rd Judicial District of Anderson County, Texas, for which he received a sentence of life imprisonment. The facts of the case involved a murder within TDCJ-CID, in which the evidence showed that Tamez was placed in the cell of an inmate named William Cathey, with whom he had a dispute; when the door to the cell was opened for Cathey, Tamez rushed out and assaulted him with a fan motor wrapped in a sock, causing injuries resulting in Cathey's death.

In his petition, Tamez asserted that he received ineffective assistance of counsel, the trial court allowed him to be tried in leg irons and shackles in front of the jury, and a coerced confession was used against him.

The Magistrate Judge ordered the Respondent to answer the petition, and Tamez did not file a response to the answer. The Magistrate Judge also received copies of the state court records. After review of the pleadings and records, the Magistrate Judge issued a Report on April

1

4, 2008, recommending that the petition be dismissed. Tamez filed objections to the Report on April 22, 2008.

In his objections, Tamez says first that his attorney, Barbara Law, had a conflict of interest because she worked for State Counsel for Offenders, a division of TDCJ. He says that this conflict was demonstrated by the fact that Law did not bring up the fact that Tamez had been placed in an empty cold cell, without clothing, blankets, or a mattress, with nothing to shelter himself from the cold, which conditions resulted in the coerced confession.

However, as noted by the Magistrate Judge, nothing in the record supports Tamez's bald assertion concerning the cell conditions in which he was allegedly placed. Tamez says that Sgt. Kennedy testified that she took his clothes away, but later in her testimony, she stated that she did not recall whether she had given Tamez clothes in exchange. The record is simply silent as to Tamez's assertion that he was placed naked into a cold cell, or that any such conditions caused his confession to be involuntary.

The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." Ross v. Estelle, 694 F.2d 1008, 1011-12 and n.2 (5th Cir. 1983); see Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990). Tamez's bald assertions concerning the cell conditions, which he says taint the voluntariness of his conditions, are unsupported and unsubstantiated by anything in the record, and thus lack probative evidentiary value.

Although Tamez says that Law had a "conflict of interest," he has not pointed to any facts which show that Law either had or demonstrated any loyalty to the Texas Department of Criminal Justice rather than to him. Similar arguments - for example, that public defenders have a conflict of interest because they are paid by the State - have been rejected by the courts. See, e.g., Pasillas-Martinez v. U.S., — F.Supp.2d —, slip op. no. EP-05-0152-DB (W.D.Tex., June 2, 2005) (unpublished) (available on WESTLAW at 200 WL 1397012) (rejecting claim of conflict of interest

because public defender paid by United States just like the U.S. Attorney is), *citing* Mickens v. Taylor, 535 U.S. 162, 165-66 (2002). Mickens held that until the defendant shows that counsel "actively represented conflicting interests," he has not established a constitutional predicate for his claim of ineffective assistance. Here, Tamez has not shown that Law actively represented conflicting interests, and so his claim on this point is without merit.

Second, Tamez discusses the issue of his alleged shackling before the jury. After reviewing the record, the Magistrate Judge ascertained that there was some indication that Tamez had been in leg shackles, but that the record strongly implied that these shackles had not been visible to the jury. Immediately before Tamez testified, Law stated that Tamez had been in shackles and that he had been at the end of the counsel table; the judge stated that Tamez would be placed in the witness box before the jury came in (in other words, the jury would not see him walk to the witness box in leg shackles) and that his hands would be left unshackled. The Magistrate Judge observed that if the shackles had been visible to the jury during the trial, there would have been no reason for concern regarding having him walk to the witness box.

In addition, the Magistrate Judge said, the jury was aware that Tamez was a prisoner in TDCJ, and that he had previous convictions for possession of a deadly weapon in a penal institution and burglary of a habitation. The Magistrate Judge stated that even if the jurors did see his shackles, they were unlikely to be surprised or prejudiced by this fact, but rather would reasonably have assumed that the shackles were due to Tamez's pre-existing status as an inmate. The Magistrate Judge thus concluded that any error which may have arisen from the fact that Tamez was shackled did not contribute to the finding of guilt or assessment of a life sentence.

In his objections, Tamez says that the jury had a direct view of his shackles during the entire proceeding, but points to nothing in the record which confirms this bald assertion. He says that he has a witness affidavit from an inmate witness saying that Tamez's shackles were visible from the witness stand, and he says that the witness box is "next to" the jury box, and again speculates that Law was "prohibited from advocating against TDCJ security personnel." Tamez does not refer to

3

the precautions taken by the trial judge to prevent the jury from seeing the shackles by placing him in the witness box outside of the presence of the jury.

Instead, he says that the Report "tries to lighten the burden" by pointing out that he was a prisoner, and says that this argument must fail because he is presumed innocent until proven guilty. While he undoubtedly enjoyed the presumption of innocence during trial, the Report stated that the jury knew that Tamez was already a prisoner in TDCJ and would thus reasonably conclude that the shackles were due to that pre-existing state and did not pertain to whether or not he was guilty of the present charge; in other words, even assuming that the jurors did see the shackles, they could still presume him innocent of the murder charge, knowing that he was shackled because he was already a prisoner. The Magistrate Judge properly concluded that the evidence showed beyond a reasonable doubt that even if the jury saw leg shackles on Tamez, this did not contribute to the finding of guilt or the assessment of a life sentence. Tamez's claim on this point is without merit.

Third, Tamez complains of an alleged failure to investigate the mitigating evidence which he presented, including evidence of an abusive childhood and a mental disorder. He cites cases in which he says that the failure to raise evidence of an abusive childhood was held to be error and says that he told Law about his own background, but that she said that it was "not mitigating." He says that his uncle visited Law several times and she never asked about Tamez's childhood, family background, or "embarrassing secret." He explained that he told Law that he was sexually abused as a child by his uncle, that he was physically abused by his parents, and that he had twice tried to commit suicide.

Tamez argues that had counsel presented this evidence, the jury would have perceived that Tamez had an "immediate necessity" to defend himself against Cathey, whom he says had a "known propensity for violence" and had threatened to rape and kill him. He complains that the Report said that there is no "unspoken policy" of letting inmates fend for themselves, citing a case called <u>January v. State</u>, 811 S.W.2d 631 (Tex.App.-Tyler 1991); however, the decision in <u>January</u>

rejected the use of the necessity defense to the charge of possession of a deadly weapon in a penal institution, saying that to allow inmates to possess deadly weapons under any circumstances would seriously undermine the security of the penal institution.

As the Magistrate Judge observed, there is no evidence in the record to support Tamez's bald assertion that he was the victim of childhood physical or sexual abuse. In the absence of any such evidence, Tamez's bald assertion alone, unsupported and unsubstantiated by any other evidence, lacks probative evidentiary value. His claim on this point is without merit.

Third, Tamez refers to the issue of gang affiliation. He says that his confession referred to the "Mexican Mafia," and that it should have been redacted or a jury instruction given. As the Magistrate Judge observed, however, the confession said that Cathey had been falsely saying that Tamez was a member of the Mexican Mafia, which was done to cause problems between Tamez and the actual gang members. In affirming Tamez's conviction, the Court of Appeals pointed out that the confession indicated that Tamez was *not* a gang member and that Cathey was falsely saying that he was. Tamez has not shown that he was harmed by the fact that his confession stated that Cathey was falsely implying that he, Tamez, was in the Mexican Mafia, which was not true. Investigator Bill Jones testified that the incident was not gang-related.

During the punishment phase of the trial, a gang intelligence officer named Sgt. Castro testified that Tamez was a member of a gang called the Latin Kings. Law did object to this testimony and secured a running objection.

Tamez argues that the U.S. Supreme Court has held that it is unconstitutional to consider a defendant's membership in a racist gang, the Aryan Brotherhood, when that issue was not relevant to the crime or to any issue being decided in the punishment phase. Dawson v. Delaware, 503 U.S. 159. 165 (1992). The Texas courts have interpreted Dawson to hold that membership in a gang is admissible upon proof of the group's violent and illegal activities, and the defendant's membership in the group. Mason v. State, 905 S.W.2d 570, 577 (Tex.Crim.App. 1995). In this case, Sgt. Castro testified that Tamez admitted membership in the Latin Kings, and that the Latin Kings'

activities included homicides, extortion, and drug trafficking. Tamez cites Fuller v. Johnson, 114 F.3d 491 (5th Cir. 1997), but that case held that the defendant's gang membership was relevant to the question of future dangerousness in sentencing. Similarly, Tamez cites Miller-El v. Johnson, 261 F.3d 445 (5th Cir. 2001), which also said that membership in an armed paramilitary group was relevant to the question of future dangerousness in sentencing.[1] In this case, Tamez's gang membership was relevant and admissible because it met the criteria set out by the Texas Court of Criminal Appeals in Mason. His objections on this point are without merit.

Next, Tamez talks about "seven removals" of jurors who were allegedly biased. As the Court of Appeals observed, the trial court worked together with defense counsel and the prosecutor to determine who should be struck or dismissed, to shortcut the process of excusing and removing jurors. Tamez v. State, 205 S.W.3d 32, 38 (Tex.App.-Tyler 2006, no pet.). All of Tamez's requests to challenge jurors were granted, and Tamez has not shown that he suffered any harm as a result of the shortcut employed by the trial court. His claim on this point is without merit.

In a related claim, Tamez argues that two TDCJ employees were left on the jury. Nothing in the record supports this assertion; Tamez makes bald allegations that counsel admitted this to him, but absent any support in the record, his unsubstantiated contention lacks probative evidentiary value. Even were this true, Tamez has not shown that TDCJ employees would necessarily have been biased against him; his defense to the charges was that he was responding to the threats directed against him by Cathey, a defense which may have been more likely to resonate with persons familiar with the day-to-day realities of life within the prison. Tamez cites case law saying that if even one juror was improperly excluded, the defendant is entitled to a new sentencing hearing, but fails to show that any person was improperly excluded from jury service. His claim on this point is without merit.

---

[1] In Wainwright v. Lockhart, 80 F.3d 1226 (8th Cir. 1996), also cited by Tamez, there was no evidence that the defendant belonged to any gang, unlike in the present case.

Tamez argues that he should be entitled to an evidentiary hearing. However, the Fifth Circuit has stated that bald assertions on a critical issue in a habeas petition, unsupported and unsupportable by anything else contained in the record, are insufficient to warrant an evidentiary hearing. Johnson v. Scott, 68 F.3d 106, 112 (5th Cir. 1995), *citing* Byrne v. Butler, 845 F.2d 501, 513-14 (5th Cir.), *cert. denied* 487 U.S. 1242 (1988); *see also* Theriot v. Whitley, 18 F.3d 311, 315 (5th Cir. 1994). Tamez's bald assertions, which are unsupported by anything in the record, do not warrant an evidentiary hearing.

Finally, Tamez sets out the law regarding discovery in habeas corpus cases. He does not specifically state that he should be entitled to discovery, nor does he show the requisite good cause; the record does not reveal that Tamez has ever filed a motion seeking discovery. To the extent that this may be construed as an objection to the Report of the Magistrate Judge, it is without merit. [2]

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the original and supplemental petitions, the answer filed by the Respondent, the Report of the Magistrate Judge, the Petitioner's objections thereto, and all other pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the objections of the Petitioner are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. Finally, it is

---

[2] Tamez has also filed motions during the pendency of this case asserting that his life is in danger from incidents unrelated to the legality of his conviction. Such incidents are not properly part of this habeas corpus action. *See* Pierre v. U.S., 525 F.2d 933 (5th Cir. 1976) (the purpose of habeas corpus is to grant relief from unlawful imprisonment or custody, and it cannot be used for any other purpose). Tamez is free to seek relief under the Civil Rights Act, 42 U.S.C. §1983, if he believes that his civil rights have been violated through deliberate indifference to his safety.

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**SIGNED this 28th day of April, 2008.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE